UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                          :
LYNDON CHRISTOPHER YOUNG,                                  :
                                                          :        12-CV-2342 (ARR) (SG)
                              Plaintiff,                   :
                                                          :        NOT FOR PRINT
              -against-                                    :        PUBLICATION
                                                          :
THE UNITED STATES,                                         :        OPINION AND ORDER
                                                          :
                              Defendant.                  :
                                                          :
------------------------------------------------------------------- X

ROSS, United States District Judge:

       Plaintiff Lyndon Christopher Young brings this suit under the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, for personal injuries arising out of an incident that

occurred while he was in federal immigration custody in 2009. Defendant United States of

America has moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for summary judgment. For the

reasons set forth below, I find that the court lacks subject matter jurisdiction over two of

plaintiff's negligence claims because plaintiff did not satisfy the FTCA's presentment

requirement, and the court lacks subject matter jurisdiction over the remaining negligence claim

because it is barred by the FTCA's discretionary function exception. Accordingly, defendant's

motion is granted and the complaint is dismissed for lack of subject matter jurisdiction.


                                      **BACKGROUND**

**I.      Plaintiff's Cell Assignment**

       The following facts are undisputed unless otherwise noted. Plaintiff was detained on

federal immigration charges from 2007 to November 2009 at Federal Detention Center Oakdale

("FDC Oakdale") in Louisiana. Def.'s Local Rule 56.1 Statement of Undisputed Facts ("Def.'s Facts"), Dkt. #43, Ex. 2, ¶¶ 1-2. During part of plaintiff's detention at FDC Oakdale, he was placed in the Special Housing Unit ("SHU"), a unit with increased security designed to house inmates who commit rule infractions. Id. ¶¶ 3, 10. Between July 6, 2009, and August 4, 2009, plaintiff shared a cell in the SHU with inmate Bebb Okitapoy. Id. ¶ 39.

Plaintiff asserts that he made multiple complaints to FDC Oakdale staff members expressing his safety concerns about sharing a cell with Okitapoy. He did not know Okitapoy prior to their assignment to the same cell in the SHU. Decl. of Adanna U. Ugwonali ("Ugwonali Decl."), Dkt. #45, Ex. 3, Dep. of Lyndon Young ("Pl. Dep.") 180. Plaintiff testified that when an FDC Oakdale officer brought plaintiff to the SHU for the first time, plaintiff saw Okitapoy in the cell "making a lot of noise" and was concerned about "the way he was acting." Id. at 178. Plaintiff told the officer, Tony King, that he did not want to share a cell with Okitapoy, but he testified that King "just smiled and put me with him." Id. Plaintiff testified that during the period that he and Okitapoy shared a cell, Okitapoy threatened to harm him on about two occasions. Id. at 91. Okitapoy told plaintiff not to sleep because he would hurt him while he was sleeping. Id. at 77. Plaintiff testified that he filled out written complaint forms, known as "cop-out forms," in which he described Okitapoy's threats, stated that he feared his life was in danger, and asked for a transfer to a different cell. Id. at 76-77. He recalls filing "a couple" of cop-out forms, but he does not remember exactly how many he filed and did not keep copies. Id. at 76. He testified that FDC Oakdale staff did not respond to the cop-out forms. Id. at 77. Plaintiff also testified that "a couple of times" he told officers on duty that his cellmate was threatening him and asked to be moved to a different cell. Id. at 78-79. He testified that the officers told him to speak to supervising officer Frederick Cobb. Id. at 78. Plaintiff testified that every time Cobb performed

rounds, plaintiff would complain to him about his cellmate, but Cobb told him that he would have to wait until the monthly "shift change" when inmates would be moved to different cells. Id. at 79-80.

Defendant denies that FDC Oakdale staff received complaints from plaintiff about his cellmate. Both King and Cobb testified that they did not recall plaintiff making complaints about Okitapoy. Decl. of Matthew Silverman ("Silverman Decl."), Dkt. #44, Ex. E, Dep. of Tony King ("King Dep.") 12-14; Ex. C, Dep. of Frederick Cobb ("Cobb Dep.") 23. Mark Gutierrez, who was at the time the unit manager, testified that inmates' reports of threats from other inmates are typically sent to a lieutenant to investigate. Silverman Decl., Ex. F, Dep. of Mark Gutierrez ("Gutierrez Dep.") 22-24. If the lieutenant determined that there was "some actual justification that there was an issue," the report would be sent to the Special Investigative Supervisor (SIS) for an investigation. Id. at 43-44. Gutierrez testified that in his role as unit manager he made weekly rounds in the SHU to hear any complaints from inmates, and he does not recall that plaintiff complained to him about wanting to switch his cell. Id. at 40. Lieutenant Brian Webb asserts that the SIS department has no record of a complaint from plaintiff regarding his placement with Okitapoy. Decl. of Brian Webb ("Webb Decl."), Dkt. #44, Ex. 7, ¶ 27.

## II.     Incident on August 4, 2009

There is no dispute that an incident occurred between plaintiff and Okitapoy on the morning of August 4, 2009. Plaintiff testified that Okitapoy was using the toilet in the cell and had his hands in the toilet. Def.'s Facts ¶ 54. Plaintiff asked Okitapoy to flush the toilet because it was starting to smell, and Okitapoy took his hands out of the toilet and flung something at plaintiff, causing plaintiff to feel a "splash." Id. Okitapoy then rushed at plaintiff, grabbed him

by the jumpsuit, and head butted him. Id. ¶ 55. Plaintiff fell straight back and hit his head on the bunk bed and floor. Id. Plaintiff testified that he may have been "knocked out" temporarily and felt "dizzy." Pl. Dep. 105. When plaintiff revived, he saw that Okitapoy was on top of him and that plaintiff's right foot was facing backwards. Id. at 105-07. Plaintiff testified that Okitapoy was not hitting him but was holding plaintiff's jumpsuit so that plaintiff could not move. Id. at 107. Plaintiff testified that he did not feel pain at this time and only felt pain later when officers pulled Okitapoy off of him. Id.

The record does not clearly establish how long it took for the officers to intervene. Plaintiff testified that he heard other inmates in the unit calling for officers to come and assist. Id. at 108. Plaintiff testified that he may have been knocked out for about two or three minutes, then after he revived and found Okitapoy on top of him, it took about eight minutes for officers to enter his cell. Id. at 110. He also testified that he saw an officer at the window of the cell telling Okipatoy to get off him, then, about five minutes later, four or five officers entered the cell wearing "riot gear" and carrying shields and batons. Id. at 111-12. Plaintiff testified that after the officers entered the cell, it took about three minutes for them to pull Okipatoy off plaintiff. Id. at 113. For their part, Senior Officer Joseph Manuel and Senior Officer M.B. Cole reported that they responded to the cell, heard screaming, and saw Okitapoy on top of plaintiff holding him down. Webb Decl., Ex. 2-3. The officers called for assistance and waited for Lieutenant Webb and other staff members to arrive. Id. Manuel testified that it would have taken no more than a minute and a half for officers to arrive at the scene. Silverman Decl., Ex. D, Dep. of Joseph Manuel ("Manuel Dep.") 15-16. Webb asserted that he responded to the incident as soon as he heard about it on the radio and that it would have taken him less than three minutes to get to plaintiff's cell, even from the farthest point on the FDC Oakdale grounds. Webb Decl. ¶¶ 28-29,

31. Webb stated that once he arrived on the scene, he waited for enough staff members to arrive before ordering that they enter the cell. Id. at ¶ 31.

It is undisputed that once the officers entered the cell, they pulled Okitapoy off plaintiff, restrained both plaintiff and Okitapoy, and sent both of them for medical assessment. Def.'s Facts ¶¶ 65-66. Around 8:45 a.m., staff at the SHU assessed plaintiff's injuries and provided treatment, then moved him to FDC Oakdale's Health Services Unit for further treatment. Id. ¶ 67. An ambulance then took plaintiff to a local hospital for further evaluation and treatment of an injury to his right leg. Id. According to hospital records, doctors diagnosed plaintiff with fractures in his right leg and performed surgery. Ugwonali Decl., Ex. 7. When plaintiff returned from the hospital to FDC Oakdale, he was placed in a cell by himself and was no longer housed with Okitapoy. Pl. Dep. 80.

### III.   Plaintiff's FTCA Claim

Plaintiff was deported to his native country of Trinidad in November 2009 and returned to the United States on May 18, 2011. Def.'s Facts ¶ 2. After plaintiff returned to the United States, while he was in federal immigration custody at LaSalle Detention Facility ("LaSalle") in Louisiana, he filed a claim with the federal government regarding the injuries he sustained at FDC Oakdale. Pl. Dep. 139-40.

Plaintiff filed his claim by filling out a "Claim for Damage, Injury, or Death, Standard Form 95" ("SF 95"). Ugwonali Decl., Ex. 9. On the form, plaintiff stated that his claim concerned an incident that occurred on August 4, 2009, at 10:45 a.m. Id. Section 8 of the form, labeled "Basis of Claim," instructs claimants to "[s]tate in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved,

the place of occurrence and the cause thereof." Plaintiff's response to this section, in full, consisted of the following statement:

> [P]ain and suffering $10,000.00 dollars per day. Psycological [sic] trauma "mentally and emotionally punitive damages" $10,000.00 per day, Negligent in ICE security custody. $10,000.00 per day, occurred at F.D.C. P.o. Box 5010, Oakdale, la 71463.

Id. In the section of the form labeled "State the nature and extent of each injury or cause of death, which forms the basis of the claim," plaintiff wrote: "[B]odily damage extreme injury continuous pain and suffering—see medical records from incident in Oakdale F.D.C, MR lyndon young inplate of a stainless steel rod." Plaintiff continued this answer on a separate typed page on which he stated: "My right leg bone was drilled from my knees down to my ankle and implanted with a stainless steel rod that was placed with three pins holding the bone together, based on my injury I need to seek disability and medical coverage." Id. Plaintiff signed this separate page and dated it May 31, 2011. Id. At the bottom of the SF 95, in the section entitled "Amount of Claim (in dollars)," plaintiff filled in the box for "Personal Injury" with the phrase "Bodily harm" and filled in the box for "Total" with "$20,650.000." Id. Plaintiff testified that he typed his answers onto the form himself with assistance from a fellow inmate in LaSalle who helped inmates with legal issues. Pl. Dep. 140-41. He sent the form from LaSalle by certified mail to the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"). Id. at 139, 146-47. On July 22, 2011, the Federal Bureau of Prisons ("BOP") sent plaintiff a letter acknowledging that ICE received the claim on June 8, 2011, and forwarded it to the BOP for processing. Ugwonali Decl., Ex. 10.

Plaintiff testified that he also sent a handwritten letter to ICE with additional details about his claim. Ugwonali Decl., Ex. 8. In the handwritten letter, dated June 6, 2011, and addressed to "chief counsel," plaintiff asked ICE to acknowledge receipt of his tort claim. Id. He also stated:

> On Aug 04, 2009 at 10:45 am, whiles being in Protected Custody my cell mate who is mentaly disturb attacted me causing me bodily damage to my left eye and nose by a head bott causing my eye to swell and nose to bleed. I slip and fell whiles on the floor I heard other inmates from other Cells Calling for the Staff Employes to help me that's when I notice my right leg was broken, it was approximately 7 to 8 minutes it took the Officers to come to my Aid when they came to the Cell they ask the disturb inmate to get off me he answer back saying no they then rushed in the Cell and grabed him off me, it took the Ambulance 15 minutes to get to the Facility, I then was tooken at Christus St Frances Cabrini Hospital at Alexandria, LA, and was rushed for Emergency Surgury . . . . I told the C.O.'s not to put me together with that inmate but they still put me with him.

Id. Plaintiff also provided his contact information. Id. In his deposition, plaintiff initially testified that he wrote this handwritten letter before he filled out the SF 95, to make sure he "wrote it properly" before typing the information onto the form. Pl. Dep. 147. Plaintiff testified that he included just a "brief" description on the typed claim form and that he also enclosed the handwritten letter with his claim form to give "a rundown of what happened." Id. at 148. After further questioning regarding the dates on the SF 95 and the handwritten letter, plaintiff stated that he had sent two different mailings to ICE and had only received an acknowledgement of receipt for one of the mailings, but he could not remember what documents he had included in each mailing. Id. at 158-59. Plaintiff later testified that he had written the handwritten letter on June 6, 2011, and had sent the letter by certified mail two or three days later. Id. at 176-77. He testified that the staff at the mail room at LaSalle gave him receipts when he mailed letters, but he no longer has the receipts because he could not take his paperwork with him when he left the detention center. Id. at 152.

Defendant asserts that the government never received plaintiff's June 6 handwritten letter. Defendant submitted a declaration from Steven G. Ohrvall, an Associate Legal Advisor in the ICE department that is responsible for reviewing all FTCA claims submitted to ICE. Decl. of Steven G. Ohrvall, Dkt. #44, Ex. 4, ¶¶ 1-2. Ohrvall states that all administrative claims, including

ones addressed to "Office of Chief Counsel," would be forwarded to his office for processing. Id.

¶ 2. He states that a review of ICE records shows that ICE received one FTCA claim from

plaintiff, consisting of a SF 95 and a one-page typed attachment that was signed on May 31,

2011. Id. ¶¶ 4-5. Ohrvall states that "ICE records contain no further correspondence from

Plaintiff or his attorneys regarding this tort claim." Id. ¶ 7. Defendant also submitted a

declaration from Tamala Robinson, a BOP legal assistant. Decl. of Tamala Robinson, Dkt. #44,

Ex. 5, ¶ 1. Robinson states that, according to a review of BOP files, the BOP received the

following documents regarding plaintiff's tort claim: the SF 95 and one-page typed attachment

forwarded from ICE; a letter from plaintiff dated September 26, 2011, with an updated address;

and a letter from plaintiff dated November 10, 2011, asking the BOP to forward any decision or

response to his attorneys.  Id. ¶¶ 8, 10, 12. Robinson states that "[n]o further correspondence was

received from Plaintiff or his attorneys regarding this tort claim." Id. ¶ 14.

There is no dispute that the BOP sent plaintiff a letter dated December 30, 2011,

informing plaintiff that the BOP had denied his FTCA claim. The letter states, in relevant part:

> You claim government liability in the amount of twenty thousand six hundred
> fifty and 00/100 dollars ($20,650.00) for alleged personal injury . . . . You appear
> to claim that on August 4, 2009, staff at the Federal Correctional Complex (FCC)
> in Oakdale, Louisiana, implanted a steel rod in your right leg, resulting in a
> disability. An investigation into your claim revealed on August 4, 2009, you were
> involved in an altercation with another inmate at FCC Oakdale. Staff completed
> an injury assessment and noted a laceration on your left eyebrow, a bruise on your
> lower eye, and a deformed right lower leg. You were transported to a contract
> local hospital for an emergency surgical procedure to repair spiral fractures of
> your right tibia and fibula . . . . No evidence supports your claim of negligence.
> Bureau of Prisons staff provided timely and appropriate medical treatment for
> your condition, including medication and surgery by a contract orthopedic
> specialist . . . . Because no evidence indicates that you suffered any injuries
> caused by the negligent or wrongful acts or omissions of any government
> employee acting within the scope of employment, your claim is denied.

Ugwonali Decl., Ex. 11. The letter also advised plaintiff that he could file suit in federal district

court within six months if he disagreed with the agency's determination. Id.

## IV.  Procedural History

Plaintiff, through counsel, brought this district court suit on May 11, 2012. Dkt. #1.  In his Second Amended Complaint, plaintiff asserts that FDC Oakdale staff members negligently failed to protect him from the attack by his cellmate. Second Am. Compl., Dkt. #19. First, plaintiff alleges that he made numerous complaints to staff regarding his cellmate "acting violently, threatening plaintiff, acting indecently and acting in an unstable and frightening manner," but staff members did not report his complaints to the appropriate supervisors. Id. ¶ 40. Second, plaintiff alleges that BOP staff assigned plaintiff to share a cell with an inmate who had a "propensity for violence and mental instability" and failed to properly monitor his cellmate. Id. ¶ 47. Third, plaintiff alleges that staff "failed [to] respond to or ignored the numerous screams and shouts for assistance, intervention and help by the plaintiff and numerous other inmates, for ten to fifteen minutes while the plaintiff was being violently attacked by his cellmate." Id. ¶ 53. As a result of the "carelessness and inattentiveness" of FDC Oakdale staff, plaintiff suffered "serious and permanent personal injuries requiring the care and treatment of physicians, hospitalization and medication," has been "hampered in his daily routine," and experiences "permanent excruciating pain while attempting or trying to carry out his daily chores." Id. ¶¶ 57, 59. Plaintiff seeks compensatory damages, attorneys' fees, and costs.

Defendant originally proposed filing a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction on the same grounds raised in the instant motion. Instead, plaintiff amended the complaint and the parties proceeded to discovery. The parties have now engaged in extensive fact discovery, including a deposition of plaintiff, depositions of BOP officials in

Louisiana, and disclosure of BOP records.[1] Discovery is now complete, except that the parties have deferred expert discovery with respect to damages. Dkt. #34.

Defendant now brings a motion to dismiss the complaint or, in the alternative, for summary judgment. Defendant argues that the court lacks subject matter jurisdiction over this action because plaintiff did not comply with the FTCA's presentment requirement and because plaintiff's claims are barred by the FTCA's discretionary function exception. Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem."), Dkt. #43, Ex. 3. Plaintiff opposes the motion, arguing that he adequately presented his claim and that BOP officials' acts of negligence and inattentiveness fall outside the scope of the discretionary function exception. Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Opp'n"), Dkt. #45.

## DISCUSSION

### I.      Standard of Review Under Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). As the party seeking to invoke the jurisdiction of the court, plaintiff bears the burden of demonstrating that subject matter jurisdiction is proper based on a preponderance of the evidence. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). In resolving a motion to dismiss pursuant to Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint but will not draw inferences favorable to the party asserting jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). The court may consider affidavits and other materials beyond the pleadings but cannot

---

[1] The parties have filed portions of Okitapoy's BOP records under seal to protect the privacy of a non-party.

"rely on conclusory or hearsay statements contained in the affidavits." J.S. ex rel. N.S., 386 F.3d at 110; see also Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-41 & n.6 (2d Cir. 2001).

## II.      FTCA's Presentment Requirement

It is well settled that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Mitchell, 445 U.S. 535, 538 (1980); Dotson v. Griesa, 398 F.3d 156, 177 (2d Cir. 2005). The FTCA provides a limited waiver of sovereign immunity for certain types of tort claims. Celestine v. Mt. Vernon Neighborhood Health Ctr., 403 F.3d 76, 80 (2d Cir. 2005). The statute grants federal courts exclusive jurisdiction over suits against the United States for "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

The FTCA requires a plaintiff to exhaust administrative remedies before filing suit. A claimant cannot bring a suit in federal court until he has "first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). While the statute does not define what a claimant must do in order to "present" a claim to the agency, the relevant federal regulation states that, for the purposes of § 2675, "a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain." 28 C.F.R. § 14.2(a). The claimant must present the claim in writing to the federal

agency within two years after the claim accrues. 28 U.S.C. § 2401(b). The FTCA also establishes

a six-month statute of limitations for filing suit after the agency's final denial of the claim. Id.

The Supreme Court has explained that the purpose of the FTCA's presentment

requirement is to reduce the burden on the judicial system by giving agencies an initial

opportunity to resolve claims before they reach the courts. McNeil v. United States, 508 U.S.

106, 111-12 (1993). Accordingly, the requirements of § 2675 must be strictly construed:

> The most natural reading of the statute indicates that Congress intended to require
> complete exhaustion of Executive remedies before invocation of the judicial
> process. Every premature filing of an action under the FTCA imposes some
> burden on the judicial system and on the Department of Justice which must
> assume the defense of such actions. Although the burden may be slight in an
> individual case, the statute governs the processing of a vast multitude of claims.
> The interest in orderly administration of this body of litigation is best served by
> adherence to the straightforward statutory command.

Id. at 112; see Milares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998)

("Any limitations imposed by the waiver statute, whether they be substantive, procedural, or

temporal, are to be strictly applied against the claimant."); Keene Corp. v. United States, 700

F.2d 836, 841 (2d Cir. 1983) ("[B]ecause the FTCA constitutes a waiver of sovereign immunity,

the procedures set forth in Section 2675 must be adhered to strictly."). The plaintiff bears the

burden of pleading and proving compliance with the requirements of § 2675. See In re Agent

Orange Prod. Liab. Litig., 818 F.2d 210, 214 (2d Cir. 1987). The presentment requirement

cannot be waived, and a federal court lacks subject matter jurisdiction over a claim that has not

been properly presented. Celestine, 403 F.3d at 82.[2]

---

[2] While plaintiff is now represented by counsel, he filed his SF 95 pro se while he was in federal custody. Pro se claimants are held to the same strict presentment requirements of § 2675. See McNeil, 508 U.S. at 113 ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); Adeleke v. United States, 355 F.3d 144, 153 (2d Cir. 2004) ("This procedural hurdle [in § 2675] applies equally to litigants with counsel and to those proceeding pro se."); Torres v. United States, No. 07-CV-1390 (NGG)(LB), 2008 WL 2157124, at *3 (E.D.N.Y. May 20, 2008) ("[T]he presentment requirements of the FTCA apply with equal force to pro se litigants").

**A. Sufficiency of Presentment**

The Second Circuit has held that merely filing a SF 95 does not necessarily satisfy the presentment requirement. Romulus v. United States, 160 F.3d 131, 132 (2d Cir. 1998) (per curiam). Instead, the claim must "provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth." Id. (citing Keene Corp., 700 F.2d 836 at 842). The claim does not need to satisfy formal pleading requirements, but it must "be specific enough to serve the purposes intended by Congress in enacting § 2675(a)—to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." Johnson by Johnson v. United States, 788 F.2d 845, 848-49 (2d Cir. 1986) (internal quotation marks omitted), overruled on other grounds by Sheridan v. United States, 487 U.S. 392 (1988). "A claimant must provide more than conclusory statements which afford the agency involved no reasonable opportunity to investigate." Romulus, 160 F.3d at 132.

Yet a claim may be sufficient even if it does not present the claimant's specific theories of liability or the facts underlying those theories. In Johnson by Johnson, the Second Circuit held that a claim form alleging sexual assault by a postal service employee was sufficient to put the agency on notice of a claim for negligent supervision. 788 F.2d at 849.[3] The Court noted: "Although the claim supplied no facts evidencing negligent supervision and did not allege all the factual elements of such a theory of liability, a reasonably thorough investigation of the incident should have uncovered any pertinent information in the government's possession relating to the agency's knowledge, or lack of knowledge, of any prior sexual misconduct by its employee." Id. Following the guidance in Johnson by Johnson, district courts in this circuit have found that

---

[3] Defendant relies on the district court opinion in Johnson by Johnson, but the Second Circuit reversed the district court on the issue of presentment, while affirming the district court's dismissal of plaintiff's suit on other grounds.

plaintiffs properly presented claims that a reasonable government investigation should have revealed, even if the claim forms did not include the specific facts necessary to support the claim. See Henry v. U.S. Dep't of Homeland Sec., No. 10-CV-2164 (JFB)(ETB), 2011 WL 477719, at *5 (E.D.N.Y. Feb. 2, 2011) (claim alleging injury during airport screening was sufficient because "a reasonable investigation of the claim" would look at "any involvement/responsibility or lack thereof of [agency] personnel in the alleged conduct and injuries"); Lopez v. Zenk, No. 06-CV-4601 (RJD), 2008 WL 3285895, at *3 (E.D.N.Y. Aug. 8, 2008) ("[T]he question is not whether plaintiff asserted a claim for negligent denial of medical care, or even the facts necessary to establish such a claim, but whether the facts asserted should have, upon investigation, uncovered sufficient information for the Bureau of Prisons to expedite the fair settlement of the matter.").

### B. Plaintiff's Administrative Claim

In assessing whether plaintiff properly presented his claims, the court will only consider the information that plaintiff provided to the agency on the SF 95 and one-page typed attachment, since it is undisputed that the agency timely received these documents from plaintiff. Plaintiff also asks the court to consider the additional allegations that he stated in his June 6 handwritten letter, but plaintiff has not produced any evidence that the agency ever received this letter. The majority of district courts in this circuit have held that a plaintiff must show proof that the agency actually received a claim in order to satisfy the FTCA's presentment requirement. See, e.g., Jaghama v. United States, No. 11-cv-5826, 2013 WL 508497, at *2 (E.D.N.Y. Feb. 11, 2013); Torres v. United States, No. 07-CV-1390 (NGG)(LB), 2008 WL 2157124, at *3 (E.D.N.Y. May 20, 2008); Pinchasow v. United States, 408 F. Supp. 2d 138, 142 (E.D.N.Y. 2006), aff'd, No. 06-1139-CV, 2006 WL 3370714 (2d Cir. Nov. 20, 2006). Plaintiff asserted in his deposition that he mailed the handwritten letter by certified mail, but he has no receipt or

other evidence of mailing. Even if plaintiff could prove that he had mailed the letter, defendant has provided declarations of two agency employees stating that their files have no record of it, which is sufficient to establish that the agency did not receive it. See Jaghama, 2013 WL 508497, at *3 n.2; Pinchasow, 408 F. Supp. 2d at 143; Vecchio v. United States, No. 05 Civ. 393(PAC), 2005 WL 2978699, at *5-*6 (S.D.N.Y. Nov. 3, 2005); Rodriguez v. United States, No. 02 Civ. 6947(SHS), 2003 WL 21961121, at *2 (S.D.N.Y. Aug. 14, 2003). Therefore, the court cannot consider plaintiff's June 6 handwritten letter in determining whether he satisfied the presentment requirement.

In considering the sufficiency of plaintiff's SF 95, it is clear that the form does not mention any of his specific negligence claims. In this litigation, plaintiff identifies at least three bases for holding the BOP liable for his injuries: they assigned him to share a cell with an unstable cellmate, they ignored his reports of threats from his cellmate, and they responded negligently when his cellmate attacked him. None of these theories of negligence appear on the SF 95. Instead, the form only states that plaintiff was injured on August 4, 2009, and describes the injuries that he suffered, without providing any explanation of how plaintiff sustained these injuries. The form includes a general assertion, "Negligent in ICE security custody," but does not explain how any BOP staff members acted negligently. Based on this information, the BOP construed plaintiff's SF 95 as raising a claim of medical malpractice. In the denial letter, the agency states that plaintiff challenges the fact that FDC Oakdale staff "implanted a steel rod in your right leg, resulting in a disability." The agency investigated the medical care that plaintiff received after the August 4 incident, concluded that it was "timely and appropriate," and denied the claim. In short, then, what happened in this case is exactly what the FTCA's presentment requirement is supposed to prevent: plaintiff filed a vague SF 95 that the agency incorrectly

interpreted as a claim for medical malpractice, and plaintiff is now attempting to sue in federal court based on theories of liability that the agency never investigated or tried to resolve.

Plaintiff argues that he properly presented all of his claims because his SF 95 asserted a claim for negligence while he was in custody on August 4, 2009, and the BOP "actually investigated this incident and the circumstances surrounding it." Pl.'s Opp'n 11. Plaintiff also contends that nothing on plaintiff's SF 95 suggests a claim of medical malpractice, so the agency's interpretation of his form was unreasonable. Id. at 11-12. Defendant, in turn, argues that the form's generalized allegation of "negligen[ce]" cannot be read to present "any and all factual bases and theories that extend from some non-descript 'incident.'" Def.'s Reply Mem. of Law ("Def.'s Reply"), Dkt. #43, Ex. 4, at 4. Both of these arguments conflate the various theories of negligence that plaintiff now seeks to advance in this litigation, but the inquiry regarding whether a claim was properly presented is necessarily case-specific. I will analyze each of plaintiff's theories of liability in turn to determine whether a reasonable investigation of plaintiff's SF 95 would have uncovered sufficient information for the BOP to evaluate the claim, "avoid unnecessary litigation," and "expedite the fair settlement of tort claims." Johnson by Johnson, 788 F.2d at 848-49.

*1. Plaintiff's Cell Assignment*

Plaintiff's SF 95 does not properly present the claim that BOP officials negligently assigned him to share a cell with an unstable and dangerous inmate. His form does not even mention his cellmate at all, let alone refer to his cellmate's mental illness or disciplinary history. Nothing on the form would have given the agency any notice that it should investigate BOP officials' decision to assign plaintiff to share a cell with Okitapoy.

To be sure, a reasonable investigation of plaintiff's SF 95 would have informed the agency that plaintiff's cellmate caused his injuries, even though plaintiff does not provide this information on his form. The BOP medical records include plaintiff's statement to the treating medical professionals regarding the cause of the injury: "Had argument with another cellmate and altercation happened inside the cell." Decl. of Heather Howard, Dkt. #44, Ex. 2, at ECF 4. Indeed, the agency's denial letter states that the government's investigation of the claim "revealed on August 4, 2009, you were involved in an altercation with another inmate." Ugwonali Decl., Ex. 11. Therefore, the government was aware that plaintiff's claim involved an incident with his cellmate on August 4, but the connection between this incident and the BOP's decision weeks earlier to place plaintiff with this cellmate is simply too attenuated to expect the agency to anticipate this claim.

In order to present this claim to the agency, plaintiff would not be expected to specifically assert a claim for "negligent placement," nor would he have to assert all of the underlying facts. Johnson by Johnson does not require this level of detail in order to satisfy the FTCA's presentment requirement, and certainly plaintiff had no access to specific information regarding the BOP's decision to place him with Okitapoy. Yet in other cases where courts have found claim forms to be sufficient under Johnson by Johnson, plaintiffs have provided at least some information that would alert the agency to the claim under a common-sense reading of the form.

For example, in Lopez, plaintiff's SF 95 alleged that he was assaulted by corrections officers, injured, and taken to the hospital. 2008 WL 3285895, at *3. The district court found that this form sufficiently presented a claim for negligent denial of medical care, because "[a] reasonably thorough investigation should have uncovered, at a minimum, any noteworthy delay in securing medical treatment promptly after the incident." Id. at *4. Indeed, even a cursory look

at plaintiff's records would have shown that the assault occurred in the evening and that plaintiff was not admitted to the hospital until the next day. Id. In Lopez, then, even though the plaintiff did not specifically allege a delay in receiving medical care, the agency could reasonably be expected to infer this claim by connecting the two events that his form did mention: an injury and subsequent treatment at the hospital. Similarly, in Sovulj v. United States, the plaintiff alleged that BOP doctors misdiagnosed her husband's medical condition while he was in custody. No. 98-CV-5550(FB), 2003 WL 21524835, at *1 (E.D.N.Y. July 2, 2003). Her presentment letter to the BOP asserted a claim for her husband's "wrongful death . . . caused by the negligence of your facility and staff." Id. The court found that this "skeletal" claim satisfied the FTCA's presentment requirements because it "was sufficient for the agency to begin reviewing its records to investigate plaintiff's claim." Id. at *3. In Sovulj, the plaintiff's claim did not specify what type of "negligence" she alleged against BOP staff. Yet if an agency knows that it is investigating a wrongful death claim regarding a former inmate, it is entirely reasonable to expect the agency to investigate the medical care that the inmate received while he was in custody. [4] In both of these cases, the claims that the plaintiffs asserted were the types of claims that would typically arise from the facts that appeared on the face of their forms. Here, by contrast, plaintiff provided no information on his form that would lead the agency to infer that he might have a claim for negligent placement with an unstable cellmate.

---

[4] Plaintiff also relies on a Ninth Circuit case, Rooney v. United States, 634 F.2d 1238 (9th Cir. 1980). In Rooney, the plaintiff was injured in a fall while performing painting and maintenance work at an Air Force base. His claim stated that he "sustained injuries as a result of a fall and subsequent medical care," and also stated that government employees "negligently and carelessly treated, transported and cared for the claimant." Id. at 1242. The government argued that this form presented a claim for medical malpractice but did not present a claim that government negligence caused his fall. The court ruled that both claims were properly presented, finding that "it was not necessary for [plaintiff] to allege in his administrative claim that the Government's negligence caused his fall." Id. at 1242-43. Here, just as in Lopez and Sovulj, plaintiff's claim regarding the cause of his fall is readily apparent from a common-sense reading of his claim form, since he referred to "injuries as a result of a fall."

Plaintiff's SF 95 was not "specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims." Romulus, 160 F.3d at 132. The form failed to make any reference to plaintiff's cellmate or his dangerousness that would put the agency on notice of plaintiff's claim. In light of the purposes of the FTCA presentment requirement, and the clear guidance that the requirement must be construed strictly, I find that plaintiff did not properly present his claim regarding his placement with his cellmate.[5]

*2. Plaintiff's Prior Complaints About His Cellmate*

Plaintiff's SF 95 also fails to present his claim that BOP officials negligently ignored his complaints about his cellmate's prior threats. Here, too, the form does not mention that plaintiff's cellmate had previously threatened him or that plaintiff had made complaints to BOP officials about his cellmate. A reasonable government investigation into the events of August 4, 2009, would not have uncovered this claim, since the medical records and officers' reports from the incident make no reference to prior threats. Nothing on the SF 95 would have put the agency on notice that it should investigate plaintiff's history with his cellmate.

The Second Circuit's decision in Johnson by Johnson does not require a different result. In Johnson by Johnson, where the claim alleged sexual assault by a postal worker, the court held that a reasonable government investigation should have addressed "the agency's knowledge, or lack of knowledge, of any prior sexual misconduct by its employee." Id. at 849. Under those facts, it was reasonable to require the agency to look into the employee's history, since the

_____

[5] I note that, even if plaintiff's claim regarding his placement with his cellmate had satisfied the presentment requirement, it would be barred by the FTCA's discretionary function exception. See supra Part III. Housing assignments are left to the discretion of prison administrators. See 28 C.F.R. § 541.21 (inmates in the SHU "may be housed either alone or with other inmates") (emphasis added). Decisions about which inmates must be separated from other inmates are susceptible to policy analysis, as they "involve a balancing of a number of public policy considerations including the inmate safety, the ability of inmates to move about the facility, general concerns for prison security, and the effective use of limited resources." Ortiz v. United States, No. 01 Civ. 4665(AKH), 2002 WL 1492115, at *4 (S.D.N.Y. July 11, 2002); accord Taveras v. Hasty, No. Civ.A.CV-02 -1307 (DGT), 2005 WL 1594330, at *4 (E.D.N.Y. July 7, 2005) (claim that BOP negligently failed to segregate inmate with violent propensities "clearly fall[s] within the discretionary-function exception").

agency could only be liable for an assault by an individual employee if the agency had negligently failed to supervise him. Here, by contrast, since plaintiff sustained injuries while he was in federal custody, there were numerous possible bases for holding the BOP liable. The agency cannot be expected to speculate that plaintiff might be asserting a claim regarding prior complaints about his cellmate, since his form provided no indication of this claim.

Just as with plaintiff's claim regarding his cell assignment, allowing this claim to go forward would contravene the purposes of the FTCA's presentment requirement. Plaintiff's SF 95 only put the agency on notice that it should investigate the incident on August 4, 2009. The form provided no notice that the agency should investigate any prior threats that plaintiff's cellmate had made against him or any prior complaints that plaintiff had made regarding his cellmate. Plaintiff did not provide sufficient information to allow the agency to evaluate this claim and expedite settlement, so this claim is barred by the FTCA's presentment requirement.

### 3. Officers' Response to August 4 Incident

By contrast, I find that plaintiff's SF 95 did properly present his third claim that officers responded negligently to the incident on August 4, 2009. The form put the agency on notice that plaintiff suffered injuries at FDC Oakdale on that date. Even if the agency construed the form as a medical malpractice claim, a reasonable investigation should have included an inquiry into what led plaintiff to receive medical attention on that day. Once the agency knew that the plaintiff's injuries arose from an incident with his cellmate, the investigation should have examined FDC Oakdale's entire response to the altercation, encompassing not just the treatment by medical personnel but also the intervention of the officers on duty.

This situation is distinguishable from other cases where courts found that the plaintiffs' claim forms did not give the agency sufficient information to evaluate the claim. In each of those

cases, the plaintiffs filed claims regarding automobile accidents, then failed to respond to the agencies' requests for information, such as medical records, that were solely in the plaintiffs' possession. See Romulus, 160 F.3d at 131-32 (plaintiffs failed to respond to two requests for medical reports, bills, and wage loss statements); Yunkeung Lee v. U.S. Dep't of Army, No. 11-CV-331 (RRM)(CLP), 2013 WL 4048329, at *7 (E.D.N.Y. Aug. 9, 2013) (plaintiff did not respond to request for medical records and itemized bills); Furman v. U.S. Postal Serv., 349 F. Supp. 2d 553, 555-56 (E.D.N.Y. 2004) (plaintiff did not respond to agency's requests for medical bills and wage loss statements). In all of these cases, the agencies had no way to evaluate the claim's worth, because they had no way of assessing the damages unless the plaintiffs provided their medical records. Here, by contrast, plaintiff filed a claim regarding an incident that occurred when he was in government custody, so the government had access to the relevant incident reports and medical records. The agency's records included reports by three officers who responded to the scene at plaintiff's cell. See Webb Decl., Exs. 1-3. Therefore, the agency had the information necessary to investigate whether the officers acted negligently when responding to the incident.

This claim is therefore more similar to the claims in Lopez and Sovulj, both of which involved allegations of negligence by BOP staff where the relevant information was in the agency's possession. In Lopez, since the agency was on notice that the inmate was assaulted while in BOP custody and subsequently received medical treatment, the court expected the agency to look at its records to assess whether that medical care was given promptly. 2008 WL 3285895, at *4. In Sovulj, the court found that an investigation into a former inmate's wrongful death claim should include a review of his medical records. 2003 WL 21524835, at *3. Here, too, the agency was aware that plaintiff's injuries arose from an incident with his cellmate, so the

agency should have been expected to look at its own records to determine whether officers handled that incident properly.

Therefore, I find that plaintiff only presented one of his claims to the agency. Plaintiff's SF 95 failed to put the agency on notice of his claims regarding his placement with his cellmate or his prior reports about his cellmate's threats, so the court lacks subject matter jurisdiction over those claims. The only claim that plaintiff properly presented is the claim regarding FDC Oakdale officers' negligence in responding to the August 4, 2009, incident with his cellmate.[6]

### III. FTCA's Discretionary Function Exception

Having found that one of plaintiff's claims satisfies the presentment requirement, I now must consider defendant's second ground for dismissal under the FTCA's discretionary function exception. I find that the court lacks subject matter jurisdiction over plaintiff's claim that FDC Oakdale officials responded negligently to the incident with his cellmate on August 4, 2009, because the officers' decisions regarding how to respond to a conflict between inmates fall within the discretionary function exception.

The FTCA's limited waiver of sovereign immunity incorporates a number of exceptions. Under the discretionary function exception, the United States cannot be held liable for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception is intended to

---

[6] The parties also raise another dispute regarding the presentment of plaintiff's claims. In order for a claim to be properly presented, the claimant must specify a sum certain. This is a jurisdictional requirement that cannot be waived. Adams by Adams v. U.S. Dep't of Hous. & Urban Dev., 807 F.2d 318, 321 (2d Cir. 1986). On the SF 95, plaintiff wrote the amount of his claim as "20,650.000." The BOP's denial letter shows that the agency construed this figure as $20,650. Ugwonali Decl., Ex. 11. Yet plaintiff testified that he intended to write $20,650,000 on his form but "made a mistake and put the comma [in] the wrong spot." Pl. Dep. 142. In light of this court's disposition of the claims, it is unnecessary to resolve this issue.

"prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 323 (1991) (internal quotation marks omitted). A claim falls within the discretionary function exception if it satisfies a two-part test: (1) the challenged government conduct must be discretionary, meaning it involves an "element of judgment or choice" and is not mandated by statute or regulation; and (2) the judgment must be grounded in "considerations of public policy" or susceptible to policy analysis. Id. at 322-23; Berkovitz v. United States, 486 U.S. 531, 536-37 (1988). A court lacks subject matter jurisdiction over any claim falling within the discretionary function exception. Fazi v. United States, 935 F.2d 535, 537 (2d Cir. 1991).

**A. Discretionary Act Prong**

Plaintiff's claim regarding the officers' response to the August 4 incident clearly satisfies the first prong of the Berkovitz-Gaubert test, because decisions regarding inmate security and safety are discretionary in nature. "[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981). The federal statute that prescribes the BOP's duties states, in relevant part, that the BOP must "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). The BOP must also "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). "This statutory duty means that the BOP must exercise ordinary diligence or reasonable care to keep prisoners safe and free from harm." Smith v. United States, 207 F. Supp. 2d 209, 214 (S.D.N.Y. 2002) (internal quotation marks omitted). Yet the statute imposes only a general duty of care and "sets forth no particular conduct BOP personnel should engage in or avoid while attempting to fulfill

their duty to protect inmates." Taveras v. Hasty, No. 02-CV-1307 (DGT), 2005 WL 1594330, at *3 (E.D.N.Y. July 7, 2005) (internal quotation marks omitted); see also Enigwe v. Zenk, No. 03-CV-854 (CBA), 2007 WL 2713849, at *8 (E.D.N.Y. Sept. 14, 2007) ("[I]n general decisions regarding the best way to safeguard prisoners are discretionary in nature.") (collecting cases).

In particular, no federal statute, regulation, or policy prescribes how BOP officers should act when responding to a fight between inmates. "As courts in this Circuit have held, corrections officers responding to prison fights act with discretion based upon their judgment and experience." Winters v. United States, No. 10 Civ. 7571(JMF), 2013 WL 1627950, at *6 (S.D.N.Y. Apr. 16, 2013). For example, the regulations authorize BOP staff to use force "as a last alternative after all other reasonable efforts to resolve a situation have failed," and only to use "that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order." 28 C.F.R. § 552.20. The regulations also authorize staff to "apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate . . . [a]ssaults another individual." 28 C.F.R. § 552.20(a). The regulations leave it to the discretion of BOP officers to assess each individual situation and determine whether the use of force is warranted, what amount of force is necessary, and what type of physical restraints are necessary. In this case, therefore, the officers who responded to the incident between plaintiff and his cellmate had discretion to determine what type of intervention the situation warranted.

**B. Public Policy Prong**

Applying the second prong of the Berkovitz-Gaubert test, the court must consider whether the officers' discretionary decisions were grounded in considerations of public policy. Where, as here, the relevant statutes and regulations grant officials discretion, "it must be

presumed that the agent's acts are grounded in policy when exercising that discretion." <u>Gaubert</u>, 499 U.S. at 324. This presumption can be overcome if the plaintiff can show that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." <u>Id.</u> Decisions about how to intervene in a fight between inmates are "inherently susceptible to policy analysis" because they involve on-the-spot judgments based on considerations of inmate safety, officer safety, and available resources. <u>Winters</u>, 2013 WL 1627950, at *6. Accordingly, "[c]ourts have consistently held that the decision as to how to respond to inmate violence is one grounded in policy considerations." <u>Banks v. United States</u>, No. 10 Civ. 6613(GBD)(GWG), 2011 WL 4100454, at *14 (S.D.N.Y. Sept. 15, 2011) (collecting cases), report and recommendation adopted by 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011).

In this case, it is undisputed that once the first officer arrived on the scene, he did not intervene immediately and instead waited for backup, then a group of officers entered plaintiff's cell together. Prior cases establish that the decision to wait for backup and the determination about how many staff members should be present before intervening are exactly the types of policy judgments that the discretionary function exception is intended to shield. In <u>Taveras</u>, a fight broke out between plaintiff and another inmate while they were in a locked recreation cell. An officer called for backup and waited while "the two inmates continued to fight." <u>Taveras</u>, 2005 WL 1594330, at *1-*2. The court held that the officer's decision to wait for assistance before unlocking the cell and separating the inmates fell within the discretionary function exception, "as there exists no provision that mandates breaking up inmate fights immediately, possibly at the expense of safety of the prison personnel." <u>Id.</u> at *4. In <u>Banks</u>, an officer ordered plaintiff and another inmate to stop fighting, then left the area to secure the unit without first

separating them. After the officer left, the inmate assaulted plaintiff again. Banks, 2011 WL 4100454, at *1. The court concluded that the discretionary function exception shielded the decision because the officer "observed a safety risk and made an on-the-spot assessment of how best to resolve it." Id. at *14; see also Winters, 2013 WL 1627950, at *6 (finding that officer's response to fight in common area by ordering prisoners to lock in, securing the door, and calling for assistance falls within the discretionary function exception). Here, too, the determination about how many officers to assemble before entering plaintiff's cell was a public policy decision that required the officers to balance considerations of safety and available resources.

### C. Negligent Guard Theory

Plaintiff can overcome the FTCA's discretionary function exception if he can demonstrate that the officers' actions in this case were the result of laziness, carelessness, or inattentiveness, rather than grounded in policy considerations. The Second Circuit has held that, under the so-called "negligent guard theory," an official's "lazy or careless failure to perform his or her discretionary duties with due care" is not shielded by the discretionary function exception. Coulthurst v. United States, 214 F.3d 106, 110 (2d Cir. 2000); see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006) (per curiam) (citing Coulthurst as articulating the "negligent guard theory"). "The negligent guard theory is a theory of liability under the FTCA over which the district court clearly has subject matter jurisdiction." Triestman, 470 F.3d at 476.

Plaintiff argues that this case falls within the negligent guard theory because the officers took too long to intervene. The record does not clearly establish how long it took the officers to respond. Plaintiff testified that after his cellmate knocked him to the floor, he may have been knocked out for two or three minutes. Pl. Dep. 109-110. He testified that it took about eight minutes for officers to enter his cell, though it is unclear whether he means eight minutes from

the time that his cellmate initially rushed at him or eight minutes from the time that he revived after he was knocked out. Id. at 108-109. Plaintiff also testified that he saw an officer at the window of his cell, then about five minutes later a group of officers entered his cell wearing riot gear and helmets and carrying shields and batons. Id. at 111-12. The parties dispute how the court should construe this testimony. Plaintiff argues that this testimony means it took about thirteen minutes for officers to intervene: eight minutes for the first officer to arrive at the cell door, then five more minutes for the officers to enter the cell. Pl.'s Opp'n 26. Yet I do not find this to be a plausible interpretation of the record. Plaintiff testified multiple times that it took about eight minutes for officers to enter his cell, not eight minutes for officers to get to the door of his cell. Pl. Dep. 108-10. I agree with defendant that the most logical reading of plaintiff's testimony is that it took about eight minutes for officers to enter his cell, and an officer was at the cell door for about five minutes of that period. Def.'s Reply 18. Drawing all reasonable inferences in plaintiff's favor, I find that his testimony alleges, at most, that he was knocked out for two or three minutes, then after he revived it took three minutes for the first officer to arrive at the window of his cell and another five minutes for a group of officers to enter his cell.

Defendant has not provided any evidence that specifically rebuts plaintiff's testimony. The reports that the officers submitted at the time of the incident do not specify how long it took them to respond. Webb wrote that he was notified of the fight by radio at approximately 8:30 a.m., responded to the cell, waited for "enough staff" to arrive on the scene, and then ordered the officers to open the cell door. Webb Decl., Ex. 1. Officers Cole and Manuel submitted identical reports stating that they heard screaming in the area of plaintiff's cell at approximately 8:30 a.m., looked in to the cell, saw Okitapoy on top of plaintiff, called for assistance, and "waited for the Lieutenant and responding staff to arrive" before entering the cell. Webb Decl., Exs. 2-3. None

of the officers provided any information in the reports about how long it took for Webb to arrive on the scene or how much longer they waited for other officers to arrive before entering the cell. In their statements for this litigation, the officers did not recall exactly how long it took them to respond to this particular incident, so they could only speak to their usual practices. Webb Decl. ¶ 9; Manuel Dep. 15. Therefore, I will accept plaintiff's version of events as undisputed.

Nevertheless, I find that plaintiff's allegations regarding the officers' response do not establish that the officers acted negligently, lazily, or carelessly. Plaintiff asks the court to infer that the officers must have been lazy or careless because it took them longer than usual to arrive at the scene. Officer Manuel testified that it would take no more than a minute and a half for officers to intervene in a fight. Manuel Dep. 15-16. Plaintiff argues that, since there is no explanation for why it took longer for the officers to intervene in this case, the delay must have been due to laziness or inattentiveness. Pl.'s Opp'n 26-27. Yet plaintiff misconstrues Manuel's testimony. Manuel stated that it generally takes him a minute and a half to arrive at the scene of a fight, but he further stated that once officers arrive, they must make an on-the-spot decision about how to proceed. He testified that if he saw inmates fighting in the yard, he would not "jump in the middle of the fight and try to break it up," and instead would "wait for the adequate amount of staff to show up plus a supervisor." Manuel Dep. 16. His testimony is consistent with the undisputed fact that the officers waited for backup before intervening.

Plaintiff has not pointed to any evidence in the record to affirmatively show that the officers acted in a lazy or careless manner, nor do the surrounding circumstances give rise to an inference that the officers must have been negligent. This case stands in contrast to Hartman v. Holder, where an inmate attacked plaintiff after an officer had placed the unit on "lock down" for the night and all the inmates were together in the dormitory room. No. 1:00-cv-6107-ENV-JMA,

2009 WL 792185, at *1 (E.D.N.Y. Mar. 23, 2009). Under BOP rules, when the unit is locked down and secured, the officer on duty is required to conduct frequent rounds. Id. at *4. After the inmate attacked plaintiff, the "uncontroverted" record showed that it took the officer on duty at least fifteen minutes to respond. Id. at *10. The court held that the officer's alleged "failure to observe for at least a quarter hour a noisy, violent altercation occurring within a room containing all of the inmates under her supervision" sufficiently made out a claim that the officer was "distracted or inattentive to her duties." Id. In Hartman, the evidence in the record could not explain why it took the officer fifteen minutes to even notice an incident that occurred in the room she was supposed to be patrolling, giving rise to an inference that she had been careless. Here, not only did the officers respond more quickly than the officer in Hartman, but plaintiff's own testimony provides an explanation for what the officers were doing before they intervened: they were waiting for backup to arrive and putting on protective gear. These actions clearly fall within the discretionary function exception and in no way suggest laziness or carelessness.

Plaintiff has therefore not met his burden to establish that the negligent guard theory applies to this case. Both Coulthurst and Triestman only considered the allegations that are necessary to allow a complaint to go forward at an earlier stage of the litigation. In Coulthurst, the court held that the plaintiff's complaint alleging that he was injured in the prison's gym encompassed the possibility that prison officials were lazy or inattentive in inspecting the equipment. 214 F.3d at 109-10. The court noted that the government would be entitled to judgment after discovery "[i]f the plaintiff is unable to offer sufficient evidence to establish a triable issue of fact." Id. at 111. In Triestman, the court held that a pro se complaint stated a claim under the negligent guard theory because it alleged that "the officer on duty when the incident occurred failed to patrol or respond diligently to an emergency situation out of laziness

or inattentiveness." 470 F.3d at 475. The court made clear, however, that it construed the complaint liberally due to the plaintiff's <u>pro</u> <u>se</u> status and expressed "no ultimate view of the merits of the negligent guard theory in this case, or even of its capacity to withstand summary judgment." <u>Id.</u> at 476. Here, by contrast, the parties have completed discovery and developed the record of what happened on August 4, 2009. The plaintiff cannot point to any evidence in this record to support an inference that the officers acted negligently. <u>See</u> <u>Banks</u>, 2011 WL 4100454, *15 (distinguishing case from <u>Coulthurst</u> and <u>Triestman</u> because "here it is specifically alleged that [the officer] responded to the safety risk," and plaintiff has not alleged facts that show laziness or inattentiveness). Since this claim falls within the discretionary function exception, the court lacks subject matter jurisdiction. [7]

---

[7] Even if plaintiff could establish that this case falls outside the discretionary function exception, defendant would still be entitled to judgment as a matter of law on another ground: plaintiff cannot establish all of the elements of a negligence claim. A claim for negligence under the FTCA is governed by the law of the state "where the act or omission occurred," 28 U.S.C. § 1346(b)(1), so Louisiana law applies to this case. Under Louisiana law, courts assess negligence claims using a duty-risk analysis in which the plaintiff "must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached." <u>Louisiana ex rel. Jackson v. Phelps</u>, 672 So.2d 665, 666-67 (La. 1996). To establish the first element of cause-in-fact, "[t]he inquiry to be made is whether the accident would have occurred but for the defendant's alleged substandard conduct or, when concurrent causes are involved, whether defendant's conduct was a substantial factor in bringing about the accident." <u>Daye v. Gen. Motors Corp.</u>, 720 So.2d 654, 659 (La. 1998). Here, plaintiff testified that after his cellmate knocked him down, he momentarily lost consciousness, and when he revived he noticed that his cellmate was sitting on top of him and that plaintiff's right leg was twisted. Pl. Dep. 105-07. Plaintiff testified that after he revived, his cellmate was not hitting him but was "just holding my jumper" so that plaintiff could not move. <u>Id.</u> at 107. Plaintiff testified that he did not feel pain at this time until the officers entered the cell and pulled his cellmate off him. <u>Id.</u> Therefore, plaintiff's own testimony makes clear that the injury to his leg occurred immediately after his cellmate jumped on him, before the officers would have had any chance to respond. Plaintiff's injury would have occurred regardless of the officers' allegedly negligent delay in responding to the incident, and any delay was not a substantial factor in bringing about the injury. Therefore, defendant would be entitled to judgment, since no rational factfinder could conclude that defendants' conduct was the cause-in-fact of plaintiff's injury. <u>See Qin Chen v. United States</u>, 494 F. App'x 108, 109-10 (2d Cir. 2012) (affirming dismissal of plaintiff's FTCA claim because plaintiff could not establish the elements of negligence under New York law).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. The court lacks subject matter jurisdiction over plaintiff's claims that BOP officers negligently assigned him to a cell with an unstable cellmate and negligently failed to respond to plaintiff's complaints about his cellmate because, for both of these claims, plaintiff failed to satisfy the FTCA's presentment requirement. The court lacks subject matter jurisdiction over plaintiff's remaining claim that officers negligently responded to the incident with his cellmate on August 4, 2009, because the officers' decisions about how to intervene in a fight between inmates fall within the FTCA's discretionary function exception, and plaintiff has not presented sufficient evidence to bring the claim within the negligent guard theory. Accordingly, the complaint is dismissed in its entirety. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

__/s/_____
Allyne R. Ross
United States District Judge

Dated:      March 20, 2014
           Brooklyn, New York